**GET OUTDOORS II, LLC, Plaintiff,**

v.

**CITY OF EL CAJON, Defendants.**

**No. 03–CV–1437 W(RBB).**

United States District Court,
S.D. Florida.

Feb. 12, 2007.

Edward Adam Webb, Webb and Porter, Atlanta, GA, Patrick Lund, Lund Martin O'Neil, Newport Beach, CA, for Get Outdoors LLC A Nevada Limited Liability Company, Plaintiff.

Steven Eugene Boehmer, McDougal Love Eckis Smith Boehmer and Foley, El Cajon, CA, for City of El Cajon, California, Defendant.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WHELAN, District Judge.

On July 21,2003, Plaintiff Get Outdoors II, LLC ("Get Outdoors") commenced this action against Defendant City of El Cajon ("El Cajon") claiming that El Cajon violated Get Outdoors' First Amendment rights. El Cajon now moves for summary judgment on all claims. The Court decides the matter on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d.1). For the reasons stated below, the Court **DENIES** El Cajon's summary-judgment motion.

### I. BACKGROUND

Get Outdoors is a Nevada limited liability company, authorized to operate outdoor advertising signs throughout the State. El Cajon is a political subdivision of the State of California.

Get Outdoors is "pursuing opportunities in the outdoor advertising industry in Southern California." In the instant case, they seek to post signs in El Cajon for the purpose of "communicating commercial and noncommercial messages regarding products, services, ideas, candidates, issues, events, and other topics." (Pltf. Opp. at 2:5–8.) To that end, Get Outdoors negotiated with various property owners in El Cajon and arranged to lease space to display its signs. The properties are located in heavily commercial and industrial areas adjacent to major roads. On June 9, 2003, Get Outdoors submitted twelve sign-permit applications to El Cajon.

On June 10, 2003, El Cajon informed Get Outdoors by correspondence that only four applications for "off premises signs" could be submitted at one time, because that was the maximum allowable number of additional off premises signs under El Cajon's Zoning Ordinance. (Decl. Jim Griffin, Ex. A.) Get Outdoors was asked to retrieve its applications, select four, and properly resubmit. Get Outdoors never resubmitted. Instead, on July 24, 2003, Get Outdoors filed its First Amended Complaint, seeking injunctive relief.

On September 30, 2003, El Cajon adopted Ordinance No. 4752 titled "An Urgency Ordinance of the City of El Cajon, Implementing New Regulations for the Placement of Signs in the City of El Cajon," repealing the Zoning Ordinance that Get Outdoors applied under. On October 6, 2003, this Court stayed the action pending final adjudication of similar cases. In 2005, the action recommenced and after a lengthy series of hearings and conferences, El Cajon moved for summary judgment on October 10, 2006.

On November 21, 2006, this Court requested supplemental briefing addressing whether El Cajon had in fact repealed the sign ordinance in effect when Get Outdoors applied for sign permits. The Court received the requested briefing from both parties and now rules on the motion.

### II. LEGAL STANDARD

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material when, under the governing substantive

law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Freeman v. Arpaio,* 125 F.3d 732, 735 (9th Cir.1997). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322–23, 106 S.Ct. 2548. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987).

"The district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified School Dist.,* 237 F.3d 1026, 1030 (9th Cir.2001). Therefore, the court is not obligated "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan,* 91 F.3d 1275, 1279 (9th Cir.1996) (*citing Richards v. Combined Ins. Co.,* 55 F.3d 247, 251 (7th Cir.1995)). If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159–60, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

If the moving party meets this initial burden, the nonmoving party cannot de-feat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Triton Energy Corp. v. Square D Co.,* 68 F.3d 1216, 1221 (9th Cir.1995) (*citing Anderson,* 477 U.S. at 252, 106 S.Ct. 2505) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient."). Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (*quoting* Fed.R.Civ.P. 56(e)).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

## III. DISCUSSION

El Cajon moves for summary judgment on the grounds that the case: (1) is moot because El Cajon enacted a new sign ordinance and thus the one Get Outdoors applied under is no longer in effect; and (2) Get Outdoors lacks standing to claim damages because they never received a permit.

### A. MOOTNESS

"Mootness is like standing, in that if it turns out that resolution of the issue presented cannot really affect the plaintiff's rights, there is, generally speak-

ing, no case or controversy for the courts to adjudicate; no real relief can be awarded." *Smith v. University of Washington Law School,* 233 F.3d 1188, 1193 (9th Cir. 2000). An action is moot where the issues presented are no longer "live" or when the parties lack a cognizable interest in the outcome. *Jacobus v. Alaska,* 338 F.3d 1095, 1102 (9th Cir.2003). For instance, often a case becomes moot when a challenged law is repealed or expires. See *Burke v. Barnes,* 479 U.S. 361, 363, 107 S.Ct. 734, 93 L.Ed.2d 732 (1987) (bill expired during pendency of appeal, rendering moot the question of whether the president's pocket veto prevented it from becoming law); *Diffenderfer v. Central Baptist Church,* 404 U.S. 412, 414, 92 S.Ct. 574, 30 L.Ed.2d 567 (1972) (challenged law was repealed while case was on appeal, rendering the case moot); *Princeton University v. Schmid,* 455 U.S. 100, 103, 102 S.Ct. 867, 70 L.Ed.2d 855 (1982) (case mooted by substantial amendment of challenged regulations).

■ There are exceptions to the mootness doctrine. For example, when the defendant's conduct is a wrong "capable of repetition, yet evading direct review," or when the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time. *Native Village of Noatak v. Blatchford,* 38 F.3d 1505, 1509 (9th Cir.1994) ("Noatak").

■ El Cajon argues that the case is moot because the former sign ordinance was repealed when the "city properly enacted *permanent* legislation replacing the challenged ordinance." (Def. Sup. Br. at 2:17–18, emphasis added.) Get Outdoors counters by arguing that the challenged regulation is still in effect because the ordinance enacted to adopt a new sign code (Ordinance No. 4752) expired forty-five days after it was enacted, thereby reviving the constitutionally deficient regulation. (Pl. Sup. Br. at 4:12–14.) The

Court agrees with the Get Outdoors that Ordinance No. 4752 has expired. Thus, Get Outdoors' challenge is not moot.

California Government Code § 65850 defines the scope of power granted to California cities to regulate by ordinance. *See* Cal. Govt.Code § 65850. That power specifically includes the authority to "Regulate signs and billboards." *Id.* at 65850(b). The chapter further explains that any zoning ordinance imposing any regulation in Section 65850 "shall be adopted in the manner set forth in Sections 65854 to 65857." *Id.* at 65853. Those sections detail, in part, various procedural safeguards required before adopting an ordinance. For example, Section 65854 requires the planning commission to hold a public hearing on their recommendation and to give prior notice of the hearing to the public. *Id.* at 65854. The required procedures are constitutionally mandated to guarantee property owners due process of law. *Scott v. City of Indian Wells,* 6 Cal.3d 541, 549, 99 Cal.Rptr. 745, 492 P.2d 1137 (Ca.Sup. Ct.1972).

A city, however, can adopt an urgency measure as an interim ordinance without following the aforementioned procedural safeguards, pursuant to Section 65858(a), which provides in relevant part:

> Without following the procedures otherwise required prior to the adoption of a zoning ordinance, the legislative body of a ...city... may adopt as an urgency measure an interim ordinance prohibiting any uses that may be in conflict with a contemplated general plan, specific plan, or zoning proposal that the legislative body, planning commission or the planning department *is considering or studying or intends to study within a reasonable time... The interim ordinance shall be of no further force and effect 45 days from its date of adoption.* After notice pursuant to Section

65090 and public hearing, the legislative body may extend the interim ordinance for 10 months and 15 days and subsequently extend the interim ordinance for one year.

Cal. Govt.Code § 65858(a) (emphasis added). Other California cities have used Section 65858 to quickly address sign-ordinance challenges and any associated litigation. *E.g., Covenant Media of Cal., L.L.C. v. City of Huntington Park, Cal.,* 377 F.Supp.2d 828, 836–837 (C.D.Cal.2005). It appears that the El Cajon City Council had similar intentions.

On September 30, 2003, the City Council unanimously passed Ordinance 4752, entitled "An Urgency Ordinance of the City of El Cajon, Implementing New Regulations for the Placement of Signs in the City of El Cajon." (Def. Sup. Br., Ex. B at 1.) The third and fourth opening recitals and Section 35 of Ordinance 4752 are of particular relevance. Those sections state:

> *(Third)* Whereas, the Community Development Department is undertaking an independent study to assist with the City's amendment of its Municipal Code to clarify and update regulations for the placement of signs in the city of El Cajon, and anticipates changes to address those issues raised in recent lawsuits filed against the City, including *THG Enterprises, Inc. V. City of El Cajon,* thereby avoiding the costs and expenses associated with such litigation; and
>
> *(Fourth)* Whereas, in conjunction with this Ordinance, the City shall incorporate into subsequent study, the effect of changes to the Municipal Code and its regulations of signs in the city of El Cajon, for City Council consideration and possible adoption.

> Section 35: This ordinance shall take effect immediately upon passage by a 4/5ths vote of the City Council, and in accordance with Government Code Section 65858, and the City Clerk shall certify to the adoption of this ordinance and cause it to be published at least once within fifteen (15) days after its adoption.

Ordinance 4752's language establishes that the El Cajon City Council (1) identified a need to update its sign regulations due to impending lawsuits, (2) was aware their Community Development Department was undertaking an independent study of proposed changes for future consideration and possible adoption, and thus (3) passed an urgency ordinance by a 4/5ths vote under Section 65858. Without an extension, Ordinance 4752 would expire as a matter of law on November 14, 2003. El Cajon has not provided the Court with any evidence that the proper actions to extend Ordinance 4752 or to enact a permanent ordinance were ever taken.

Instead, El Cajon argues that Ordinance 4752's reference to Section 65858 was a "typographical error" and should have been passed under Section 36937.[1] (Def. Sup. Br. at 2:23–3:22.) In support of this contention, El Cajon submitted a declaration by El Cajon City Attorney Morgan L. Foley. The declaration includes the following relevant sections:

> 3. I am familiar with the procedures required to adopt ordinances under Government Code Sections 36947 (urgency ordinance) and 65858 (interim ordinance). An urgency ordinance becomes effective immediately upon passage. An interim ordinance is in effect for a limited period of time. When I have drafted

---

1. Actually, El Cajon repeatedly argues that Ordinance 4752 was meant to be passed under Section 36947, which does not exist. Morgan Foley's declaration makes the same

mistake. Based on El Cajon's quoted citations, the Court assumes El Cajon and Foley meant to argue Section 36937.

interim ordinances, I include a sunset clause indicating when the ordinance will expire. Because urgency ordinances become immediately effective, no sunset clause is included in the ordinance.

3. I drafted Ordinance 4752 which was adopted by the City of El Cajon on September 3, 2003. Ordinance 4752 was intended to be an Urgency Ordinance pursuant to Government Code Section 36947. The City Council adopted this Ordinance as an Urgency Ordinance under section 36947.[2]

5. Although the ordinance references Government Code Section 65858, this ordinance was not adopted as an interim ordinance. It was my intent and the intent of the City Council to adopt Ordinance 4752 as an urgency ordinance. The reference to Government Code section 65858(a) on page 28 of the Ordinance is a typographical error.

Apparently, El Cajon hopes the Court will alter the written language of Ordinance 4752 based on Mr. Foley's declaration. This request does not constitute a minor correction of an insignificant typographical error. Rather, substituting the number 36937 in place of 65858 would alter both the stated intent of the El Cajon City Council and legal significance of Ordinance 4752, potentially giving it permanence.[3]

Mr. Foley's declaration may be absolutely true. However, Mr. Foley is neither the Mayor of El Cajon, a City Council Member, or the City Clerk. His name does not appear anywhere in the text of Ordinance 4752. This Court does not have license to casually make a substantial alteration to an ordinance, properly passed into law by the City Council, based on one individual's declaration. Without further evidence, Ordinance 4752 must be interpreted by this Court as written. In doing so, the Court concludes that Ordinance 4752 was passed under Government Code § 65858 and has expired as a matter of law. The constitutionally challenged regulation has been revived. Thus, Get Outdoors' claims are not moot.

**B.** STANDING

Because the Court has concluded—based on the evidence presented—that Ordinance 4752 has expired, at issue is whether Get Outdoors has standing to challenge the ordinance in effect at the time of its application.

El Cajon argues that Get Outdoors lacks standing because it never received any permits. In support of this contention, El Cajon cites the "vested rights" doctrine under California state law. (Def. MSJ at 9:3–10.) However, the majority of cases El Cajon cites under this doctrine address an individual's "vested rights" in property, based on the prior issuance of a building

---

**2.** The Court has accurately quoted Mr. Foley's Declaration, but acknowledges three errors in the quoted portion. First, there are two paragraphs numbered as "3." Second, Ordinance 4752 was actually passed on September 30, 2003. Third, as previously stated, Section 36947 does not exist.

**3.** In its Supplemental Brief, El Cajon essentially argued that Section 65858 could not be used in regards to a sign ordinance, and thus the Court should accept its "typographical error" theory because the El Cajon City Council's usage of Section 65858 was improper on its face. Apparently, instead of researching the available uses of Section 65858, El Cajon simply cited the Morgan Foley's declaration in support of its argument. (Def's Sup. Br. 3:21–27.) As the Court has shown, El Cajon and Mr. Foley's representations about Section 65858 are incorrect. *E.g., Covenant Media of Cal., L.L.C.,* 377 F.Supp.2d at 836–837. Get Outdoors, therefore, characterizes El Cajon's "typographical error" theory as a misrepresentation, and requests the Court to issue an Order under Rule 11(c)(1)(B) directing El Cajon's counsel to show cause as to why it should not be sanctioned. While the Court is tempted by the suggestion, it currently declines to issue the requested Order.

permit. *E.g.; Lakeview Dev. v. City of S. Lake Tahoe,* 915 F.2d 1290, 1294 (9th Cir. 1990); *Avco Cmty. Developers, Inc. v. S. Coast Reg'l Comm'n,* 17 Cal.3d 785, 132 Cal.Rptr. 386, 553 P.2d 546 (Cal.1976); *Toigo v. Ross,* 70 Cal.App.4th 309, 321, 82 Cal.Rptr.2d 649 (Cal.Ct.App.1998). The more appropriate standard, based on Get Outdoors' claims, is the doctrine of standing under the First Amendment.

To prove standing, a plaintiff must show (1) injury in fact, (2) a causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). As a general rule, a party may assert only his or her own rights and cannot raise claims on behalf of parties not before the court. *Secretary of State Md. v. Joseph H. Munson Co., Inc.,* 467 U.S. 947, 955, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984).

In the First Amendment context, however, a party may prosecute claims on behalf of third parties.

> When a case concerns a challenge that a statute or ordinance is, on its face, unconstitutional, particularly in the First Amendment context, the type of facial challenge at issue affects the standing analysis. While a plaintiff must demonstrate an injury in fact, a plaintiff may in some circumstances assert not just his own constitutional rights, but also the constitutional rights of others.

*Horizon Outdoor, LLC v. City of Industry, CA,* 228 F.Supp2d 1113, 1123 (C.D.Cal. 2002). Thus, facial constitutional challenges come in two varieties; A Plaintiff may seek to vindicate his own constitutional rights by arguing an ordinance is "unconstitutionally vague or . . . impermissibly restricts a protected activity." *Santa Monica Food Not Bombs v. City of Santa Monica,* 450 F.3d 1022, 1033 (9th Cir.2006)

quoting *Foti v. City of Menlo Park,* 146 F.3d 629, 635 (9th Cir.1998). Or, an individual whose own speech or expressive conduct may validly be prohibited is permitted to challenge an ordinance on its face because it is overly broad and threatens others not before the court. *Brockett v. Spokane Arcades Inc.,* 472 U.S. 491, 503, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985). These challenges can be pled together allowing a plaintiff to argue that its own activity is protected and that the ordinance impermissibly suppresses the speech of others. *See NAACP v. City of Richmond,* 743 F.2d 1346, 1352 (9th Cir.1984). It is within this framework that the Court evaluates Get Outdoors' standing. *Santa Monica Food Not Bombs,* 450 F.3d at 1034.

As discussed above, Get Outdoors submitted twelve sign-permit applications. El Cajon responded by informing Get Outdoors that only four applications for "off premises signs" could be submitted at one time, and requesting Get Outdoors to resubmit four applications. Get Outdoors never reapplied. (Decl. Jim Griffin, Ex. A.) El Cajon, therefore, argues that Get Outdoors lacks standing because it never properly applied.

 Even if the Court were to conclude that Get Outdoors never applied for a permit, it would not preclude standing. *See City of Lakewood v. Plain Dealer Publ'g Co.,* 486 U.S. 750, 755–756, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988) ("[O]ne who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license.") In *City of Lakewood,* the Supreme Court confirmed that where a statute involving expressive activity vests unbridled discretion in a government official over whether to permit or deny the activity, the plaintiff's failure to apply does not preclude standing:

Recognizing the explicit protection accorded speech and the press in the text of the First Amendment, our cases have long held that when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license. *Id.* at 755–756, 108 S.Ct. 2138.

Here, Get Outdoors alleges that the City requires prior approval before signs may be posted. (FAC at ¶ 45.) Get Outdoors also alleges that City officials "are granted a virtually limitless discretion in deciding whether permission will be granted or denied" and also "retain the discretion to circumvent or alter the applicability of the Sign Regulations without regard to any enunciated standards or guidelines." *Id.* Get Outdoors further asserts that the City rejected the sign applications based on a numerosity requirement that was not listed in the ordinance. Get Outdoors, therefore, argues that the City's rejection is an example of El Cajon officials exercising unbridled discretion. (Pl. Opp. at 3:1–8.)

El Cajon responds by attempting to link the numerosity requirement to the maximum number of additional off-premises signs permitted under the ordinance. (Decl. Jim Griffin, Ex. A.) This may be a valid processing restriction. However, as previously stated, this requirement is not listed in the sign ordinance and Get Outdoors has cited other concerns about insufficient application instructions that could provide the basis for future rejections. (Pl. Opp. at 3, fn. 1) El Cajon, as the moving party, bears the burden of showing that sufficient notice of the numerosity requirement is given to all potential applicants, or that Get Outdoors' applications were insufficient for a constitutional reason that is identified in the sign ordinance or some other statute. The Court finds that based on the evidence submitted, El Cajon has failed to do so and the absence of express standards in the ordinance makes it difficult to distinguish between "a licensor's legitimate denial of a permit and its illegitimate abuse of censorial power." *City of Lakewood,* 486 U.S. at 758, 108 S.Ct. 2138.

Moreover, aside from standing under the *City of Lakewood,* the Court finds that Get Outdoors also has standing under the *Lujan* test. Get Outdoors' concern that upon resubmission it would be subject to the "unbridled discretion" of El Cajon via unknown application requirements is sufficient to establish an injury-in-fact. *Lujan,* 504 U.S. at 560–561, 112 S.Ct. 2130; *Santa Monica Food Not Bombs,* 450 F.3d at 1034. Additionally, the two remaining prongs of the standing requirement are met because the injury alleged is linked to the sign ordinance and would likely be redressed by a decision in Get Outdoors' favor. *Id.* Therefore, Get Outdoors has standing to challenge the sign ordinance on its own behalf under *Lujan.*[4]

## IV. CONCLUSION AND ORDER

In light of the foregoing, the Court **DENIES** El Cajon's motion for summary judgment.

**IT IS SO ORDERED.**

---

4. El Cajon has not expressly challenged Get Outdoors' standing to assert the right of third parties through an overbreadth facial challenge, and thus the Court need not address that issue.